UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAESAR RAYMOND FONTILLAS,<br><br>Petitioner,<br><br>v.<br><br>ERIC ARNOLD,<br><br>Respondent. | No. 2:16-cv-2799 MCE DB P<br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner is a state prisoner proceeding pro se and in forma pauperis with a petition for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner challenges his sentence imposed by the Sacramento Superior Court in 2012 for 375 years to life. Petitioner alleges his sentence is so disproportionate to his crimes that it violates the Eighth Amendment's prohibition on cruel and unusual punishment. For the reasons set forth below, this court will recommend the petition be denied.

## BACKGROUND

**I.　Facts Established at Trial**

The California Court of Appeal for the Third Appellate District provided the following factual summary:

> The prosecution presented evidence of eight burglaries and three attempted burglaries in Sacramento and Elk Grove between September 2009 and March 2010. Police stopped defendant, who

1

was driving a vehicle reportedly seen by victims, on March 10, 2010. Defendant had sold or given many of the stolen items to his coworkers at the Sacramento County Regional Wastewater Treatment Plant, where he was gainfully employed as a supervisor earning $8,000 monthly.

The jury heard evidence of the residential burglaries, in each of which the victims testified they arrived home to find forced entry, ransacked homes, and missing items, including computers and other electronics, jewelry, and cameras. In two of the burglaries, the victims arrived home in time to see a man outside their home who claimed to be checking on a sewage problem in the neighborhood. One victim identified defendant as that man at trial, while another noted the resemblance but did not give a positive identification.

The victims in the three attempted burglaries testified that defendant or a man resembling him, wearing an orange vest, rang the doorbell. One victim opened the door. The man asked if her toilets were working properly and asked if she needed any plumbing work done. She said no and shut the door. The man resembled defendant. Another victim did not answer the doorbell or the pounding on the door but looked out her upstairs window. When the man started jiggling the doorknob, she called out "who is it?" The man in the orange vest said he was looking for sewer lines. She said she was busy and could not open the door. He drove away in an orange truck. She did not identify defendant as the man. The third victim did not respond when someone repeatedly rang her doorbell and knocked on her door. She then heard a scratching sound and a pop coming from the front door area. She went out through the garage and saw defendant wearing a yellow vest and gloves, trying to pry open her front door with an 18–inch slim jim. She asked him what he was doing. He said he was checking on clogged sewers for the Sacramento County Utilities District, needed to get into the house, and was trying to pry open the door because nobody appeared to be home. She asked him for an ID or business card, but he said he did not have one. She pointed out that the sewer access was outside. Defendant left, telling her to call the sewer company to verify his story. He drove away in a butterscotch-colored GMC Colorado pickup truck. Police later brought her to a location where she identified defendant as the man. She also identified him at trial.

For the charge of receiving stolen property, the jury heard evidence that, on September 14, 2009, a homeowner left home at 7:00 a.m. and returned at 8:30 p.m. to find her home ransacked and burglarized, with no evidence of forced entry and no fingerprints recovered. Missing items included a computer and new printer, jewelry, and $700 cash.

Defendant testified at trial. He denied all charges. He claimed he did not know the items he sold or gave to coworkers were stolen. He claimed he got all items from flea markets, garage sales, Craigslist, or his ex-wife. Defendant admitted he was convicted of four felony offenses in 1993.

People v. Fontillas, No. C071139, 2015 WL 4739560, at *1-2 (Cal. Ct. App. Aug. 11, 2015).

## II. Procedural Background

### A. Judgment and Sentencing

The jury found defendant guilty on 11 counts: One count of receipt of stolen property (count two), seven counts of residential burglary (counts three, five, eight, 10, 11, 13, and 17), and three counts of attempted residential burglary (counts 12, 14, and 16). The jury was unable to reach a verdict as to the other counts, and they were dismissed.

In a bifurcated proceeding, the trial court found true that defendant had three prior convictions: A 1986 arson (§ 451, subd. (c)) and two residential burglaries on March 31, 1993.

The defense moved to strike the prior convictions (§ 1385; *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497), arguing defendant's parents and girlfriend love him; at the time of his arrest he was gainfully employed by the county; the prior convictions were old and no one was hurt; and he did not commit violence in the present offenses.

In opposition, the prosecutor recounted defendant's extensive criminal history, as reflected in the probation report. In 1979, while a juvenile, he was adjudicated as having committed two counts of residential burglary, an attempted burglary, and receiving stolen property. He next tried to cash a $1,162 check of a victim whose identification had been stolen in a burglary. As an adult, defendant was convicted of residential burglary and attempted residential burglary in 1981 and placed on probation for three years. In 1984, while employed by the California State Board of Pharmacy, he fraudulently issued pharmacy licenses to four women already under investigation for fraud and, in an attempt to hide the evidence, set fires in three government offices, resulting in damage in excess of $300,000. When arrested, he had in his possession blank pharmacy licenses. He posted bond, then failed to appear for his court date.

Defendant fled to Hawaii, assumed a new identity as David Chin, got a job at Tower Records, stole $2,000 from the register, and was arrested but was released before his true identity was discovered. He stole a car, a Versatel card, and cash. He flew to the San Francisco airport, impersonated a rental car agent and stole a car. He drove to Los Angeles and later to Seattle, where he got a job working for a gem buyer. He was ultimately arrested in 1986 on the arrest warrant. Cocaine and $135,000 in stolen gems were found in his Seattle apartment. And he stole from the mail a $35,000 ring belonging to his employer.

Back in Sacramento, defendant was convicted in 1986 of the 1984 arson, possession of stolen property, embezzlement, and falsifying government records. He was sentenced to 116 months in prison. He was paroled in May 1991.

In 1993, defendant was convicted of nine counts of residential burglaries occurring between May and August 1992. He was

3

> sentenced to 25 years in prison. He was released on parole in March 2005, got the job with the county, and was discharged from parole in 2008. Despite earning $8,000 per month, defendant resumed burglarizing homes, leading to this prosecution.
>
> The trial court denied defendant's motion to strike the prior convictions, noting this case of a career criminal was exactly the kind of case for which the three strikes law was designed.
>
> At the sentencing hearing on May 4, 2012, the trial court stated it was sentencing defendant to an indeterminate term of 275–years–to–life (25 years-to-life for each of the 11 counts), plus three five-year enhancements for the three prior convictions for a total enhancement of 15 years for each of 10 counts, for a consecutive determinate term of 150 years. The court stated it would impose a section 654 stay on the sentence for count two, receiving stolen property.
>
> On May 14, 2012, the trial court on its own motion recalled the sentence and issued a sentencing correction order, stating there was no need for a section 654 stay for receipt of stolen property, because the jury did not convict defendant of the burglary of that same property. The correction order reimposed the same indeterminate sentence of 275–years–to–life (25–years–to–life for each of the 11 counts). The order also imposed 15 year prior-strike enhancements on each of all 11 counts, which would total 165 years. The court ordered the clerk to prepare an amended abstract of judgment.
>
> The abstract of judgment dated May 14, 2012, correctly shows the indeterminate term (275–years–to–life) but did not follow the court's (erroneous) order to add the prior-strike enhancement to count two, receipt of stolen property.
>
> After defendant filed his opening brief on appeal, the trial court on June 10, 2013, issued another sentencing correction order making two changes. First, the court removed the enhancements from count two, receipt of stolen property, because it is not a serious felony triggering the enhancements (§§ 667, subd. (a)(1), 1192.7, subd. (c)). Second, the court removed one of the three enhancements from each of the remaining 10 counts because two of the prior convictions were brought and tried in the same prosecution, triggering only one five-year enhancement for those two prior convictions. The court issued a new abstract of judgment on June 10, 2013.
>
> Accordingly, defendant's sentence is an indeterminate term of 275–years–to–life plus a consecutive determinate term of 100 years.

Id. at *2-3.

### B. State Appeal and Federal Proceedings

Petitioner filed an appeal in which he alleged, among other things, the Eighth Amendment claim he asserts here. The California Court of Appeal affirmed the judgment as modified on June 10, 2013. People v. Fontillas, No. No. C071139, 2015 WL 4739560, at *1-2 (Cal. Ct. App. Aug.

4

11, 2015).[1] Petitioner sought review in the California Supreme Court on his Eighth Amendment claim. (ECF No. 1 at 60-68.) The California Supreme Court denied review on October 14, 2015. (ECF No. 1 at 83.)

Petitioner does not appear to have sought habeas corpus review in the state courts. He filed his habeas corpus petition here on November 28, 2016. (ECF No. 1.) Respondent filed an answer (ECF No. 9) and petitioner filed a traverse (ECF No. 17).

## STANDARDS OF REVIEW APPLICABLE TO HABEAS CORPUS CLAIMS

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. Greene v. Fisher, 565 U.S. 34, 37 (2011); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). Circuit court precedent "'may be persuasive in determining what law is clearly established and whether a state court applied that

---

[1] A copy of the Court of Appeal's opinion can also be found appended to the petition. (ECF No. 1 at 70-80.)

5

law unreasonably.'" Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." Marshall v. Rodgers, 569 U.S. 58, 64 (2013) (citing Parker v. Matthews, 567 U.S. 37 (2012)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct." Id. at 1451. Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue. Carey v. Musladin, 549 U.S. 70, 76-77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003) (quoting Williams, 529 U.S. at 405-06). "Under the 'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] [Supreme] Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.'" Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (quoting Williams, 529 U.S. at 413; Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, 529 U.S. at 411; see also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Andrade, 538 U.S. at 75 ("It is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous." (Internal citations and quotation marks omitted.)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court

was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103.

There are two ways a petitioner may satisfy subsection (d)(2). Hibbler v. Benedetti, 693 F.3d 1140, 1146 (9th Cir. 2012). He may show the state court's findings of fact "were not supported by substantial evidence in the state court record" or he may "challenge the fact-finding process itself on the ground it was deficient in some material way." Id. (citing Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004)); see also Hurles v. Ryan, 752 F.3d 768, 790-91 (9th Cir. 2014) (If a state court makes factual findings without an opportunity for the petitioner to present evidence, the fact-finding process may be deficient and the state court opinion may not be entitled to deference.). Under the "substantial evidence" test, the court asks whether "an appellate panel, applying the normal standards of appellate review," could reasonably conclude that the finding is supported by the record. Hibbler, 693 F.3d at 1146 (9th Cir. 2012).

The second test, whether the state court's fact-finding process is insufficient, requires the federal court to "be satisfied that any appellate court to whom the defect [in the state court's fact-finding process] is pointed out would be unreasonable in holding that the state court's fact-finding process was adequate." Hibbler, 693 F.3d at 1146-47 (quoting Lambert v. Blodgett, 393 F.3d 943, 972 (9th Cir. 2004)). The state court's failure to hold an evidentiary hearing does not automatically render its fact-finding process unreasonable. Id. at 1147. Further, a state court may make factual findings without an evidentiary hearing if "the record conclusively establishes a fact or where petitioner's factual allegations are entirely without credibility." Perez v. Rosario, 459 F.3d 943, 951 (9th Cir. 2006) (citing Nunes v. Mueller, 350 F.3d 1045, 1055 (9th Cir. 2003)).

If a petitioner overcomes one of the hurdles posed by section 2254(d), this court reviews the merits of the claim de novo. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised."). For the claims upon which petitioner seeks to present evidence, petitioner must meet the standards of 28 U.S.C. § 2254(e)(2) by showing that he has not "failed to develop the factual basis of [the]

claim in State court proceedings" and by meeting the federal case law standards for the presentation of evidence in a federal habeas proceeding. See Cullen v. Pinholster, 563 U.S. 170, 186 (2011).

The court looks to the last reasoned state court decision as the basis for the state court judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). "[I]f the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, [this court] may consider both decisions to 'fully ascertain the reasoning of the last decision.'" Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc) (quoting Barker v. Fleming, 423 F.3d 1085, 1093 (9th Cir. 2005)). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. This presumption may be overcome by showing "there is reason to think some other explanation for the state court's decision is more likely." Id. at 99-100 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. Johnson v. Williams, 568 U.S. 289, 293 (2013). When it is clear, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

**ANALYSIS**

Petitioner contends his 375-year sentence is effectively life without parole, not an indeterminate sentence with the possibility of parole, because he cannot serve the minimum term within his natural lifespan. Petitioner further argues that a 375-year sentence is disproportionate to his non-violent crimes and criminal history.

////

////

## I. Eighth Amendment Standards

The Eighth Amendment to the United States Constitution proscribes "cruel and unusual punishments." U.S. Const. amend. VIII. The United States Supreme Court has held that the Eighth Amendment includes a "narrow proportionality principle" that applies to terms of imprisonment. See Graham v. Florida, 560 U.S. 48, 60 (2010); Harmelin v. Michigan, 501 U.S. 957, 996, (1991) (Kennedy, J., concurring); see also Taylor v. Lewis, 460 F.3d 1093, 1097 (9th Cir. 2006). However, the precise contours of this principle are unclear, and successful challenges in federal court to the proportionality of particular sentences are "exceedingly rare." Solem v. Helm, 463 U.S. 277, 289-90 (1983); see also Ramirez v. Castro, 365 F.3d 755, 775 (9th Cir. 2004). "The Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." Harmelin, 501 U.S. at 1001 (Kennedy, J., concurring) (citing Solem, 463 U.S. at 288, 303).

In assessing the compliance of a non-capital sentence with the proportionality principle, a reviewing court must consider "objective factors" to the extent possible. Solem, 463 U.S. at 290. Foremost among these factors are the severity of the penalty imposed and the gravity of the offense. "Comparisons among offenses can be made in light of, among other things, the harm caused or threatened to the victim or society, the culpability of the offender, and the absolute magnitude of the crime." Taylor, 460 F.3d at 1098. In addition, the court is required to compare the harshness of petitioner's penalty with the gravity of not only his triggering offense but of his criminal history because petitioner was sentenced under an anti-recidivism statute. Ewing v. California, 538 U.S. 11, 28-29 (2003); Norris v. Morgan, 622 F.3d 1276, 1290 (9th Cir. 2010); Ramirez, 365 F.3d at 767 ("The question is whether [the petitioner's] extreme sentence is justified by the gravity of his most recent offense and criminal history.").

The following decisions of the United States Supreme Court illustrate these principles. In Harmelin, the Supreme Court upheld a life sentence without the possibility of parole for a first-time offender convicted of possessing 672 grams of cocaine. Harmelin, 501 U.S. at 961. In Andrade, the Supreme Court held that it was not an unreasonable application of clearly

9

established federal law for the California Court of Appeal to affirm a "Three Strikes" sentence of two consecutive 25-year-to-life imprisonment terms for a petty theft with a prior conviction involving theft of $150.00 worth of videotapes. Andrade, 538 U.S. at 75. In Ewing, the Supreme Court held that a "Three Strikes" sentence of 25 years to life in prison imposed on a grand theft conviction involving the theft of three golf clubs from a pro shop was not grossly disproportionate and did not violate the Eighth Amendment. 538 U.S. at 29. In Hutto v. Davis, 454 U.S. 370 (1982), the Supreme Court upheld the defendant's sentence of 40 years in prison after his conviction for possession of nine ounces of marijuana and drug paraphernalia. Finally, in Rummel v. Estelle, 445 U.S. 263 (1980), the Supreme Court upheld a sentence of life with the possibility of parole for a defendant's third nonviolent felony: obtaining money by false pretenses.

Federal circuit courts have upheld similarly lengthy sentences. See e.g., Crosby v. Schwartz, 678 F.3d 784, 791-92 (9th Cir. 2012) (sentence of 26 years to life under California's Three Strikes Law for the defendant's failure to annually update his registration as a sex offender and failure to register within five days of a change of address did not constitute cruel and unusual punishment, in violation of the Eighth Amendment); Norris, 622 F.3d at 1285–96 (upholding a sentence of life in prison without the possibility of parole under Washington's "Two Strikes Law" following the defendant's conviction for child molestation, which involved "touching a five-year-old girl on her 'privates' or 'genitalia' and over her clothing for at most 'a couple of seconds'"); Nunes v. Ramirez–Palmer, 485 F.3d 432, 439 (9th Cir. 2007) (sentence of 25 years to life for crime of petty theft with a prior did not offend the Constitution where petitioner had extensive and serious felony record); Taylor, 460 F.3d at 1098 (upholding a "Three Strikes" sentence of 25 years to life in prison for possession of 36 milligrams of cocaine); Rios v. Garcia, 390 F.3d 1082, 1086 (9th Cir. 2004) (finding district court's conditional writ of habeas corpus erroneous on Eighth Amendment challenge to sentence of 25 years to life for petty theft conviction with a prior and two prior robbery convictions).

**II.     State Court Opinion**

Because the California Supreme Court denied review, the opinion of the California Court of Appeal is the last reasoned decision of the state court:

10

Defendant was 51 years old at trial. His sentence—275–years–to–life plus a consecutive 100 years—is equivalent to a sentence of life in prison, which does not necessarily constitute cruel and unusual punishment under the federal or state Constitutions. (*People v. Byrd* (2001) 89 Cal.App.4th 1373, 1382–1383 (*Byrd* ).)

The Eighth Amendment to the United States Constitution prohibits "cruel and unusual punishments" and applies to the states through the 14th Amendment. (*Robinson v. California* (1962) 370 U.S. 660, 675–676 [8 L.Ed.2d 768].) The Eighth Amendment contains a "'narrow proportionality principle' that 'applies to noncapital sentences.'" (*Ewing v. California* (2003) 538 U.S. 11, 20 [155 L.Ed.2d 108, 117] (*Ewing* ).) While this proportionality principle "'does not require strict proportionality between crime and sentence,'" it does prohibit "'extreme sentences that are "grossly disproportionate" to the crime.'" (*Id.* at p. 23 [155 L.Ed.2d at p. 119].)

This proportionality analysis under the Eighth Amendment requires consideration of (1) the gravity of the offense and harshness of the penalty; (2) the sentence imposed on other criminals in the same jurisdiction; and (3) the sentence imposed for the same crime in other jurisdictions; however, a successful proportionality challenge will be "'exceedingly rare,'" and it is only in the rare case where a comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality that the second and third criteria come into play. (*Ewing*, *supra*, 538 U.S. at pp. 22, 30 [155 L.Ed.2d at pp. 118, 123], quoting *Rummel v. Estelle* (1980) 445 U.S. 263, 272 [63 L.Ed.2d 382, 390] (*Rummel* ); *Harmelin v. Michigan* (1991) 501 U.S. 957, 1005 [115 L.Ed.2d 836, 871–872] conc. opn. of Kennedy, J.; *In re Coley* (2012) 55 Cal.4th 524, 537–544 [upheld 25–years–to–life sentence for failing to update sex offender registration].)

The California Constitution, article I, section 17, states: "Cruel or unusual punishment may not be inflicted or excessive fines imposed." The California prohibition is broader than the federal prohibition. (*In re Alva* (2004) 33 Cal.4th 254, 291.) Under the California standard, punishment is excessive if the defendant shows it is so disproportionate to the crime that it shocks the conscience and offends fundamental notions of human dignity. (*People v. Dillon* (1983) 34 Cal.3d 441, 477–478 (*Dillon* ); *In re Lynch* (1972) 8 Cal.3d 410, 424.) Factors include (1) the nature of the offense and the offender; (2) a comparison of the sentence with punishments prescribed in the same jurisdiction for different offenses which, by the same test, must be deemed more serious; and (3) a comparison of the challenged penalty with the punishments prescribed for the same offense in other jurisdictions having an identical or similar constitutional provision. (*Lynch*, *supra*, 8 Cal.3d at pp. 425–427.)

The burden is on defendant to show disproportionality. (*People v. Retanan* (2007) 154 Cal.App.4th 1219, 1231 (*Retanan* ); *People v. Crooks* (1997) 55 Cal.App.4th 797, 808.)

////

Defendant's opening brief on appeal offers no proportionality analysis of sentences in California for more serious crimes or sentences in other jurisdictions for the same offense. We take this as a concession that his sentence withstands a constitutional challenge on either basis, just as we did in *Retanan*, *supra*, 154 Cal.App.4th 1219, where the defendant made no effort to compare his sentence with more serious offenses in California or with punishments in other states for the same offense. (*Id.* at p. 1231 [135–years–to–life for sexual offenses against child victims].)

Instead, defendant relies (as did the defendant in *Retanan*) on a dissenting opinion and a concurring opinion of Justice Mosk that a sentence incapable of being completed in the defendant's lifetime makes a mockery of the law and amounts to cruel and unusual punishment. (*People v. Deloza* (1998) 18 Cal.4th 585, 600 (*Deloza*)) (Mosk, J., concurring); (*People v. Hicks* (1993) 6 Cal.4th 784, 797 (Mosk, J., dissenting).) However, as we said in *Retanan*, "'"no opinion has value as a precedent on points as to which there is no agreement of a majority of the court. [Citations.]" [Citations.] Because no other justice on our Supreme Court joined in Justice Mosk's concurring opinion [in *Deloza*], it has no precedential value.'" (*Retanan*, *supra*, 154 Cal.App.4th at p. 1231.) Similarly, no other justice joined in Justice Mosk's dissenting opinion in *Hicks*, which did not even involve a cruel and unusual punishment claim. (*Hicks*, supra, 6 Cal.4th at p. 797.) Additionally, we agree with *Byrd*, *supra*, 89 Cal.App.4th at p. 1383, that it is immaterial that defendant cannot serve the full sentence during his lifetime; in practical effect, the sentence is no different than a sentence of life without possibility of parole.

That leaves consideration of the nature of the offense and the offender. (*Dillon*, *supra*, 34 Cal.3d at p. 479.)

The purpose of the Three Strikes Law is not to subject a criminal to a long sentence based on the latest offense, but to punish recidivist behavior. (*In re Coley*, supra, 55 Cal.4th at p. 542; *People v. Diaz* (1996) 41 Cal.App.4th 1424, 1431.) The State has an interest in dealing in a harsher manner with those who by repeated conduct have shown they are incapable of conforming to the norms of society as established by the criminal law. (*Ewing*, *supra*, 538 U.S. at p. 29; *In re Coley*, *supra*, 55 Cal.4th at p. 542.) Habitual offender statutes have withstood constitutional scrutiny on claims of cruel and unusual punishment or disproportionate sentence. (*Rummel*, *supra*, 445 U.S. at pp. 265–266 [63 L.Ed.2d at p. 386] [life sentence with possibility of parole under Texas recidivist statute for obtaining $120.75 by false pretenses, after prior convictions for $80 credit card fraud and passing a $28 forged check, did not constitute cruel and unusual punishment]; *In re Coley*, *supra*, 55 Cal.4th at pp. 529, 542; *People v. Ayon* (1996) 46 Cal.App.4th 385, 396–400 [upheld 240–years–to–life sentence, the functional equivalent of a life sentence without possibility of parole, for current armed robberies after prior residential burglaries], *disapproved on other grounds by Deloza*, *supra*, 18 Cal.4th at p. 600, fn. 10.)

////

Defendant's storied criminal history, recounted above, amply supports the sentence.

Defendant's argument is based on his false premise that he is not dangerous because he did not physically attack his victims. However, the seriousness of the threat a particular offense poses to society is not dependent solely on whether it involves significant physical injury. (*Rummel*, *supra*, 445 U.S. at p. 275 [63 L.Ed.2d 392].) Society's interest in deterring criminal conduct or punishing criminals is not always determined by the presence or absence of violence. (*People v. Ingram* (1995) 40 Cal.App.4th 1397, 1415, *overruled on other grounds in People v. Dotson* (1997) 16 Cal.4th 547, 560.) The mere imposition of a life sentence without possibility of parole for offenses dangerous to society does not constitute cruel or unusual punishment under the federal or state Constitutions. (*Byrd*, *supra*, 89 Cal.App.4th at p. 1383 [robberies].)

Residential burglary and attempted residential burglary are serious offenses. (§ 1192.7, subd. (c)(18) & (39).) Residential burglary is particularly dangerous because the risk of violence is inherent in the crime. (*People v. Sparks* (2002) 28 Cal.4th 71, 82; *People v. Hughes* (2002) 27 Cal.4th 287, 355 (*Hughes*); *People v. Hines* (1989) 210 Cal.App.3d 945, 950–951, *overruled on other grounds in People v. Allen* (1999) 21 Cal.4th 846, 864.) "'"'Burglary laws are based primarily upon a recognition of the dangers to personal safety created by the usual burglary situation—the danger that the intruder will harm the occupants in attempting to perpetrate the intended crime or to escape and the danger that the occupants will in anger or panic react violently to the invasion, thereby inviting more violence.'" [Citation.] "In addition, a burglary of an inhabited dwelling involves an invasion of perhaps the most secret zone of privacy, the place where trinkets, mementos, heirlooms, and the other stuff of personal history are kept. Society therefore has an important interest in seeing to it that burglars stay out of inhabited dwelling houses."' [Citation.]" (*Hughes*, *supra*, 27 Cal.4th at p. 355 [home was inhabited though victim was in process of moving out].)

Defendant is wrong on the facts when he wants credit for "tr[ying] hard to avoid any confrontation or contact with the victims." He did not testify to any such efforts but rather denied having committed the burglaries at all. On appeal, defendant claims he would break into the victims' home only "[i]f the occupants were not home." But that is not true. As evidenced by the attempted burglaries, he would break in if no one answered the door. This does not mean no one was home. People are entitled to be home and not answer the doorbell. And defendant would break in if people were home, as evidenced by the attempted burglary where the homeowner emerged from the garage and caught defendant trying to pry her door open. Even when caught, he still attempted entry by telling her he was checking the sewer and needed to get into her house. He left only after she pointed out the sewer access was outside. At another home, he asked if the toilets were working properly, suggesting he might have entered if allowed to do so.

////

> Defendant's reply brief cites cases holding recidivist sentences to be cruel and unusual where the current offense was minor. That is not the case here.
>
> We conclude defendant's sentence does not constitute cruel and/or unusual punishment.

Fontillas, 2015 WL 5739560, at *3-6.

### III. Does Petitioner's Sentence Violate the Eighth Amendment?

Pursuant to the authorities cited above, the sentence imposed on petitioner, while most certainly quite harsh, is not grossly disproportionate to his crimes of conviction and his criminal past so as to render it unconstitutional. Petitioner was convicted of ten felonies: seven counts of residential burglary and three counts of attempted residential burglary.[2] Petitioner's current crimes are far more serious than the petty theft convictions before the court in Andrade, the shoplifting conviction in Ewing, the conviction for obtaining money under false pretenses at issue in Rummel, and the conviction for possession of .036 grams of cocaine in Taylor, all of which involved the imposition of lengthy sentences which were upheld against an Eighth Amendment challenge. Moreover, as noted by the California Court of Appeal, the California legislature has authorized long terms of incarceration to punish and prevent recidivism and petitioner has pointed to no clearly established Supreme Court precedent that "forecloses that legislative choice." See Ewing, 538 U.S. at 30 n. 2.

For the reasons explained above, this is not a case where "a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." Solem, 463 U.S. at 1004–05. This is particularly true when petitioner's extensive criminal history is considered. Petitioner cites a few decisions of the United States Supreme Court for the general proposition that the Eighth Amendment bars sentences that are disproportionate to the crime committed.[3] However, he cites no federal case law, much less any holdings of the United States

---

[2] Petitioner's conviction for receipt of stolen property was a wobbler – it could have been treated as a misdemeanor or a felony for sentencing purposes. (See ECF No. 1 at 49.)

[3] One of the cases petitioner cites is Graham v. Florida, 560 U.S. 48 (2010). (See ECF No. 17 at 7.) In Graham, the Court held that, categorically, a sentence of life without parole on a juvenile offender who did not commit homicide violates the Eighth Amendment. Petitioner cannot rely on

Supreme Court, supporting his argument that his sentence is disproportionate. (See ECF No. 1 at 45-52.)

This court notes that cases in which courts found lengthy sentences violated the Eighth Amendment vary significantly from petitioner's ten current felony convictions and extensive criminal history. In Solem, the petitioner was sentenced to life without parole for "one of the most passive felonies a person could commit" - writing a $100 bad check. 463 U.S. at 296. Further, while he had prior felonies, each was "relatively minor" and the Court noted that the petitioner was "not a professional criminal." Id. at 297 & n. 22. The Court determined that the petitioner's sentence was "significantly disproportionate to his crime" and violated the Eighth Amendment. Id. at 303.

In Ramirez, the Ninth Circuit considered the petitioner's 25-years-to-life sentence on a conviction for petty theft, a wobbler offense. 365 F.3d at 768. The petitioner had just two prior robbery convictions, also for shoplifting. The court found this sentence to be one of the "exceedingly rare" case in which the sentence imposed is grossly disproportionate to the crimes. Id. at 770. In particular, the court noted that petitioner Ramirez's criminal history "pales in comparison to the lengthy recidivist histories discussed [] in Solem, Ewing, and Andrade. Id. at 769. It goes without saying that Ramirez's criminal history also pales in comparison to the criminal history of the petitioner in the present case.

In Gonzalez v. Duncan, 551 F.3d 875 (9th Cir. 2008), the Ninth Circuit considered a three strikes sentence of 28 years to life imposed for the "passive" and "harmless" offense of failing to update a sex offender registration within the prescribed time. While the petitioner had significant prior convictions for cocaine possession, committing a lewd act with a child under 14 years of age, attempted rape by force, and second-degree robbery, the court found the "technical" nature of the petitioner's crime and the fact that his current offense was not the type that the anti-

---

Graham to demonstrate that the appellate court's denial of his claim involved an unreasonable application of clearly established federal law, because he was not a juvenile at the time he committed homicide, and the Supreme Court has not extended the rationale of Graham to non-juvenile offenders. Cf. White v. Woodall, 572 U.S. 415, 426 (2014) (holding that "if a habeas court must extend a rationale before it can apply to the facts at hand," then by definition the rationale was not 'clearly established at the time of the state-court decision'").

recidivism statute was designed to punish, to conclude the petitioner's sentence was grossly disproportionate.

Here, as noted by the trial court, petitioner's case is "exactly the kind of case for which the three strikes law was designed." Petitioner's criminal history shows a series of crimes, primarily burglaries, occurring one after another. After petitioner's 1981 burglary convictions, he committed a series of crimes in 1984. Shortly after he was paroled in 1991, he committed the first in a series of nine burglaries. Again, just a year after he was discharged from parole in 2008, petitioner committed the first in the string of burglaries which are the bases for his current convictions and sentence.

Finally, as the Court of Appeal pointed out, petitioner's sentence is essentially one of life without the possibility of parole ("LWOP"). Courts have held that an LWOP sentence is not disproportionate to a variety of crimes. The United States Supreme Court held that an LWOP sentence was not disproportionate to a first felony conviction for possession of a large amount of cocaine. Harmelin, 501 U.S. at 995. The Ninth Circuit has held that LWOP was not disproportionate for: (1) a conviction for felony burglary with a lengthy history of convictions for burglary, attempted grand larceny, and felon in possession of a firearm, Carpenter v. Neven, 735 F. App'x 379 (9th Cir. 2018); (2) a conviction for first degree child molestation with a criminal history of child molestation, Norris, 622 F.3d at 1296; and (3) convictions for possession of cocaine with intent to distribute and felon in possession of a firearm with three prior felony drug convictions, United States v. Van Winrow, 951 F. 2d 1069 (9th Cir. 1991). See also Voight v. Gipson, No. SACV 12-1231-AG(DTB), 2014 WL 1779816, at *18-24 (C.D. Cal. Apr. 30, 2014) (390-years-to-life sentence for convictions on five counts of lewd act upon a child under the age of 14 did not violate Eighth Amendment).

The court finds petitioner does not raise an inference of gross disproportionality. Therefore, this court need not compare petitioner's sentence to the sentences of other defendants. Harmelin, 501 U.S. at 1005; United States v. Meiners, 485 F.3d 1211, 1213 (9th Cir. 2007) ("[I]n the rare case in which a threshold comparison [of the crime committed and the sentence imposed]

////

leads to an inference of gross disproportionality, we then compare the sentence at issue with sentences imposed for analogous crimes in the same and other jurisdictions.").

For all of these reasons, the decision of the California Court of Appeal rejecting petitioner's argument that his sentence constitutes cruel and unusual punishment in violation of the Eighth Amendment was neither contrary to nor an unreasonable application of well-established federal law. Moreover, that decision was certainly not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103. Accordingly, petitioner is not entitled to federal habeas relief.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's petition for a writ of habeas corpus be denied.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within seven days after service of the objections. The parties are advised that failure to file objections within the specified time may result in waiver of the right to appeal the district court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991). In the objections, the party may address whether a certificate of appealability should issue in the event an appeal of the judgment in this case is filed. See Rule 11, Rules Governing § 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

Dated: February 13, 2019

DLB:9
DB/prisoner-habeas/font2799.fr

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

17